STATE v. JAMES SANFORD AGENCY.

(*Nashville*. December Term, 1933.)

Opinion filed March 31, 1934.

340

CHARLES L. CORNELIUS, ALBERT A. WHITE, and W. B. MARR, all of Nashville, for appellant.

JOHN H. LECHLEITER, E. T. HOLLINS, JR., J. G. LACKEY, C. M. LACKEY, R. C. BOYCE, E. L. McNEILLY, and DANIEL BOONE, all of Nashville, W. M. STANTON, of Memphis, PAUL CAMPBELL, of Chattanooga, LEIGHTON EWELL, of Manchester, THOMAS STEELE, of Ripley, and NORMAN FARRELL, of Nashville, the Association Committee on Unauthorized Practice of Law.

MR. JUSTICE SWIGGART delivered the opinion of the Court.

This action was prosecuted below under Code, section 9316, to enjoin the James Sanford Agency, a Tennessee corporation, from engaging in the practice of law; and also as a *quo warranto* proceeding to terminate its corporate existence because its method of transacting the

business of a collection agency amounted to an unlawful practice of law.

A temporary injunction was issued by the chancellor which, in general terms, restrained the defendant from engaging in the practice of law. This injunction was made perpetual by final decree, from which the defendant appeals. The chancellor's decree specifies the mode and manner in which the defendant's method of business encroached upon the field of the lawyer, and it is to these specific rulings that the defendant's (appellant's) assignments of error are directed. The accuracy of the chancellor's finding of fact is not questioned but is conceded by the defendant.

The business of the James Sanford Agency is of long standing and is quite extensive. It is said on one of the briefs that in 1932 it handled more than 90,000 collection items, 6,849 of which were reduced to judgment in a justice of the peace court.

The agency's plan of doing business was revised in December, 1931, in an effort to make it conform to the law as interpreted by this court in *State ex rel.* v. *Retail Credit Men's Association of Chattanooga,* 163 Tenn., 450, 43 S. W. (2d), 918. The import of that decision was made known to the agency's customers or patrons by circular letter, wherein they were informed that no future collections in Nashville and Davidson County would be made except on claims assigned to the agency. The letter described the consideration for such assignments as ''$1.00 and other valuable considerations, the other considerations, of course, being the work put in on them by us, and our checks to be sent you in settlement of the total indebtedness, less the usual collection charges if and when collection is effected.''

■ From the date of the letter the business of the agency was made to conform to the plan thus proposed. The claims of its customers were assigned to it in un-equivocal writing, ''For one dollar and other valuable consideration.'' The $1.00 was not, however, paid. The assignments expressly bound the agency, as assignee, to bear ''costs and expense'' of suits to enforce collection. A receipt was given to the assignor, signed by the agency, wherein it did ''obligate and bind itself to use all reasonable and diligent effort to collect said claim or claims as promptly as possible,'' etc. This paper recited that upon making collection, the agency would pay as additional compensation for the assignment of the claim a stipulated proportion of the amount collected. On claims collected by suit the agency's part of the sum collected is fifty per cent, instead of the usual twenty-five per cent.

We agree with the chancellor that this plan of handling the business of its customers vests the agency with no such title or interest in the claim assigned that an attorney at law, employed by the agency, on salary or fees, to sue to enforce them, can be said to act exclusively for the agency and not for the assignor. Despite the assignment, the assignor is entitled to the major portion of the net collection, the fifty per centum of the gross collection which the agency is entitled to retain being burdened with the payment of all ''costs and expense,'' including the lawyer's compensation. And if the lawyer is the agent of the agency, in such a suit, the agency is nevertheless bound to the assignor for the care and diligence its agent may fail to exercise, under its contract obligation to ''use all reasonable and diligent effort to collect said claim.'' The assignor is thus directly in-

terested in the suit which the agency may direct its attorney at law to prosecute, and such attorney at law is representing him without that privity which was held essential in *State ex rel.* v. *Retail Credit Men's Ass'n, supra.*

It is not necessary to the conclusion that such a plan or course of conduct is an unlawful invasion of the reserved field of the practice of law that each such assignment, considered as a separate transaction, be found to transgress the limits of the principle denoted by the phrase "freedom of contract." In *Ingersoll* v. *Coal Company,* 117 Tenn., 263, 303, 98 S. W., 178, 188, 9 L. R. A. (N. S.), 282, 119 Am. St. Rep., 1003, 10 Ann. Cas., 829, wherein it was held that a contract to bring a suit, solicited by a lawyer, was unenforceable, the court said:

"It is insisted that the contracts made are not illegal. This, we think, does not reach the root of the case, as the contracts themselves, abstractly considered, may be legal, and yet there may be circumstances surrounding their making which would deter the courts from enforcing them, or rights based on them, when all the facts are divulged and the nature of the consideration appears."

The chancellor was of opinion, and so decreed, that the assignments taken by the agency are not taken "for the purpose of acquiring title and ownership to the claims covered thereby, but as a device to evade the provisions of the law relating to practicing law in Tennessee." In this we concur. No prior investigation of the worth of the claims is made, but the assignment of all claims placed with the agency for collection is not only invited but required. The recited consideration of one dollar is consistently disregarded, and the agency obligates itself

only to exercise diligence in making the collection. Express authority to enforce collection by suit in the name of the assignee is given by the assignment, and from this it appears that the bringing of necessary or expedient suits is included in the diligence which the agency binds itself to exercise. If suit is brought, the share of the agency in the collection is greater than otherwise. In the execution of this plan the assignment serves only, in our opinion, to expressly deny or repudiate privity between the assignor and the attorney at law employed by the agency to prosecute the contemplated suit, and as between the parties it is nothing more or less than an undertaking by the agency to use all reasonable means and diligence, including resort to the processes of the law, to collect the assigned claim. As in the assignment considered in *Roy* v. *Sanford,* 140 Tenn., 382, 204 S. W., 1159, the only possible inference is that such of the proceeds as are to be retained by the agency are merely as compensation for its services in making the collection. They are so denominated in the agency's letter outlining the plan to its customers wherein it stated that the "other considerations" for the assignments solicited would include checks "in settlement of the total indebtedness, less the usual collection charges if and when collection is effected."

To the authorities cited in *State ex rel.* v. *Retail Credit Men's Ass'n, supra,* supporting the conclusion that the agency is in this course of action practicing law, may be added the more recent case of *Berk* v. *State ex rel. Thompson,* 225 Ala., 324, 142 So., 823, 84 A. L. R., 740.

The fact is further found by the chancellor that in bringing suit on assigned claims, the agency uses an attorney at law who is not only compensated by salary paid

by the agency, but who is a holder of a considerable portion of the agency's capital stock. When the suit is on paper binding the maker to pay an attorney's fee, the fee collected is appropriated by the agency. We do not find such use of a salaried attorney at law essential to the illegality of the plan of doing business, but it is an additional circumstance supporting the position we take that in accepting the assignment of claims, binding it to sue on them, and in bringing suit through an attorney at law, the agency is practicing law.

The chancellor further notes that in exceptional cases the agency has retained the collection business of valued customers who are unwilling to assign their claims to it. In these instances the customers are required to execute written authority to the salaried attorney at law of the agency to represent them. In the execution of this authority the attorney at law looks to the agency for his compensation, and permits the agency to appropriate fees adjudged against debtors, and collected from them, as in the case of assigned claims. We concur with the chancellor in his conclusion that in this the agency is practicing law. In the performance of his legal duty and obligation, such attorney is merely an instrument by which the agency earns its commission for making collections. The agency and not the creditor is his real client. In determining whether to bring suit, he must consider that the cost of failure must fall upon his employer. His time and services belong to his employer, and he must so employ himself as to earn his salary. A lawyer cannot serve two masters.

Counsel for the agency cite cases in which contracts were sustained as valid, notwithstanding their character and form were adopted to avoid tax burdens, and argues

that notwithstanding the motive which induced the agency to demand assignments of claims submitted for collection, the intent of the assignments is to transfer legal title to the agency, and is effective so to do, with the result that a subsequent legal action is the suit of the agency and not of the assignor. *United States* v. *Isham,* 17 Wall. (84 U. S.), 496, 21 L. Ed., 728; *Iowa Bridge Company* v. *Commissioner of Internal Revenue* (C. C. A.), 39 Fed. (2d); 777; *Weeks* v. *Sibley* (D. C.), 269 Fed., 155. We have hereinabove registered our view that the terms of the assignments do not have the effect of excluding the assignor from direct interest in the legal actions brought to collect the assigned claims. Nor do we think these cases involving liability to taxation in point. Whether a stated course of action amounts to an unlawful practice of law is a far more intangible and pervasive question than is the liability to a tax, which must be imposed with a certainty and definiteness in which all doubt is resolved in favor of the taxpayer. In the cases cited the choice of the contracting parties was between two lawful modes of doing business. Here the inquiry is whether the agency, endeavoring to avoid an unlawful practice, fell into another equally unlawful. In holding that it has not achieved a legal status, we concede to it a lawful motive, but attribute an illegal effect and result to its executed intent.

Counsel also cite *Cohn* v. *Thompson et al.,* a decision of the Appellate Department of the Superior Court, 128 Cal. App. (Supp.), 783, 16 Pac. (2d), 364, 366, sustaining the legality of a plan similar to that devised by the agency here. But that decision was expressly grounded upon a statute of the State of California recognizing the right of a collection agency to carry on its business by "ob-

taining in any manner the payment of a claim." This statutory provision, the court ruled, "is broad enough to include bringing a suit." We have no such statute, and the ruling is directly opposed here by *State* v. *Retail Credit Men's Ass'n, supra.* The issue here involved was tersely stated and determined, contrary to the position of the agency, by BISHOP, J., in his concuring opinion in the California case cited. He said: "I am not able to agree that a contract by which one obligates himself to hire an attorney to prosecute an action for the collection of a debt due another, if more peaceful methods fail, is not a contract to furnish legal services just because an assignment of the debt, solely for collection, intervenes." This expresses our view.

The decree of the chancellor contains the following paragraph:

"The Court is further of opinion that the James Sanford Agency has the right to solicit and collect claims and charge a collecting fee therefor where suit is not resorted to; and it has the right to act as agent for its patrons in selecting a lawyer, including its general counsel where suit is necessary, where the lawyer charges and receives his compensation from the creditor, and not from the James Sanford Agency, and the James Sanford Agency in nowise shares in the fee charged, and that these acts do not constitute practicing law, and it is accordingly so ordered, adjudged and decreed."

Complainants do not assign error to this ruling, but its accuracy is questioned by an intervening petition filed in this court by the bar association of Tennessee. The petition particularly criticizes the chancellor's ruling that the agency may suggest to its patrons the employment of its general counsel "who is paid a monthly

salary, and is likewise a large stockholder in the Agency."

Since the decree of the chancellor was vacated by the general appeal granted to the defendant, the quoted paragraph can have no effect on any future activity of the defendant. No facts are stated in the opinion of the chancellor which indicate that the agency has conducted its business on the plan stated, and we are of opinion that the case in this court does not involve or require consideration of a right in the agency to suggest the employment of its counsel or any other named attorney at law as the *bona fide* attorney of its cutomers. The general counsel of the agency is not a party to this suit.

Some other phases of the defendant's business are discussed on the brief of the appellees, including the writing of letters to debtors threatening them with the expensive consequences of actions at law, but are not brought to our attention by assignments of error. For that reason they are not noticed.

The decree to be entered here will adjudge that the defendant, James Sanford Agency, in the particulars and manner specified in this opinion, has engaged unlawfully in the practice of law, and from and after this date will be enjoined from (1) soliciting or accepting claims or debts for collection, by assignment or any other form of contract under which payment to the assignor or creditor is dependent on collection from the debtor, and which contemplates or authorizes the enforcement of collection by suit brought in the name of either party by the defendant or an attorney at law to be employed and compensated by it; (2) from employing an attorney at law to give legal advice or service to its customers;

(3) from instituting or maintaining legal or equitable actions for others, whether by its own agents or attorneys or those specially employed by it for the purpose; (4) from collecting and appropriating to its own use sums adjudged against debtors as attorneys' fees, on notes or commercial paper authorizing such judgment, except when such judgment is its *bona fide* property and is not rendered on a claim in its hands for collection by assignment or otherwise.

To the extent indicated, the decree of the chancellor is affirmed.