## STATE BAR v. RETAIL CREDIT ASS'N et al.

No. 25594.  Nov. 27, 1934.

Rehearing Denied Jan. 8, 1935.

Hayson & Lukenbill and Horace Thompson (C. B. Stuart, of counsel), for plaintiff in error.

Stuart, Bell & Ledbetter, for defendants in error.

WELCH, J.  In this action the plaintiff seeks to enjoin certain acts, dealings, and conduct of the defendant, on the theory that in some instances they constitute the unauthorized practice of law; that they include a repeated and systematic holding out of the defendant as authorized to give legal advice and render legal services, when defendant is wholly without such authority, and upon the theory that these, and additional acts of the defendant, constitute a fraud on the defendants' customers, and a fraud on the people and the public, and that such fraud is perpetrated in the name of certain legal and judicial phrases and by the use of pretended legal and judicial forms, and in pretense of familiarity with, and the right to use, the courts of Oklahoma in coercing and forcing the payment of money.  And the plaintiff avers that such acts and conduct of defendant, customarily and regularly engaged in, tend to bring into disrepute the law, the judiciary, the practice of law, and the administration of justice by inferring that all are subservient to defendant in making good its threats against debtors.  And plaintiff contends that such acts and conduct of the defendant tend to seriously hinder the administration of justice by reason of the promotion of ill repute thereof as aforesaid.  This is not a verbatim copy, but a statement of the substance of plaintiff's allegations.  Some further and more exact references to the allegations of plaintiff's petition will be made later.

The defendant demurred to plaintiff's petition upon four grounds as follows:

"(1)  That the court has no jurisdiction of the subject of the action.

"(2)  Because there is a defect of parties defendant.

"(3)  Because there is a defect of parties plaintiff.

"(4)  That the petition does not state facts sufficient to constitute a cause of action in favor of the plaintiff and against the defendants, or either of them."

This demurrer was sustained, and plaintiff's petition dismissed, the grounds of sustaining the demurrer being the conclusion of the trial court that the plaintiff had no capacity to maintain the action, or, as expressed in the journal entry of the trial court, "has no capacity to sue herein."  It is that action of the trial court that is here presented for review.

The plaintiff is an association specifically created by law, with general power to sue and be sued (chapter 264, Session Laws 1929,

chapter 22, art. 2, O. S. 1931), so the plaintiff has capacity in general to sue in the district courts of this state, and has capacity to sue here, unless the subject-matter of this action is such as not to come within the scope of plaintiff's capacity to sue. In considering that, we are at least to some extent directed to the fourth ground of demurrer, and must consider some of the various allegations of the petition. If the petition alleged facts upon which plaintiff is entitled to sue, and which create a condition that may be dealt with by injunction, then we must reverse the trial court.

Among other allegations the petition, in substance, charges that the defendant association is a corporation, and maintains and engages in a collection business. That in the transaction of its business it holds itself out to its customers as being competent and possessing auhority to render legal services, give legal advice and take legal action to collect claims, demands, or debts; that defendant has no such authority or competency, but upon such representations the defendant solicits and obtains patronage, and transacts its business. That defendant, in its endeavors to collect money from individuals for its own gain and for its customers, habitually and customarily attempts to collect by threats and intimidation; that the defendants throughout their efforts to collect money make use of various legal forms and pretended legal forms denominated by defendant "Bill of Particulars," "Garnishee Demand and Supplementary Notice," "Notice to Employer," "Disclaimer of Liability," "Final Demand for Debt," "Supplementary Proceedings," "Secondary Service," etc., complete copies of such documents so alleged to be used by defendants are attached to plaintiff's petition. By their use the defendants threaten the persons to whom they write, and from whom they seek to collect money, with various and sundry court actions and legal actions, some known to the law and some existing only in the fancy of the defendants and conceived by the defendants to add force to their threats of the dire consequences that will follow the failure of the person addressed to make immediate payment of money to the defendants. These documents, as prepared and used by the defendants, according to plaintiff's petition, are designed to impress the person addressed that the defendants have full right and authority to make use of the law and the process of the courts, and of the courts themselves, to carry out the threats. These threats, according to plaintiff's petition, include threats to harass, annoy, embarrass, and discredit the individual; to destroy or damage his reputation, credit, and standing; to bring about his or her discharge from present or further employment; to "Invoke Against You" (the person addressed) "Supplementary Proceedings" to compel such person to deliver to the court his or her earnings, income, credits, chattels, and personal property; and that the association may cause grievous and vexatious levies to be made.

The majority of the individuals from whom the defendants attempt to collect money are persons employed for salaries or wages. For them, according to plaintiff's allegations, the defendant association has devised a document entitled "Notice to Employer" in red print. This notice is sent to the individual with a threat that in five days it will be sent to his or her employer. There too is the pretense that the notice is a legal form or commonly used legal document. This notice advises the employer of proceedings against the employee which will or may bring the employer "Trouble, Annoyance and Expense of such proceedings," unless employer's influence is brought to bear on the employee to make him pay. In that notice is a threat that the defendant association will compel the employer to bring all his books, records, and vouchers of every kind into court "for examination and evidence" and a threat to investigate the employee's "working under a false name," and a threat directed to the employer "to subpoena your office against the body" of the individual, and with pretended authority to use the law and the courts to do all these things threatened.

There is further allegation that the defendants habitually and customarily threaten the individual from whom they seek to collect money that in a week the defendant association will resort to legal action or court action denominated as "Secondary Service," which the association suggests will result in "loss of position, injury to prestige, credit standing, reputation or influence;" and "other serious losses or damages." That at the same time, however, the defendants state to such individual that "We Disclaim All Liability," and thereby the defendants purport to say that we have authority to so use the law and the courts, and so use legal and judicial process, but by reason of our "Disclaimer of Liability" the law and the courts can give no redress for whatever devastating

damage we cause. It is alleged also that the defendants threaten that nothing will stop the defendant association from so setting in motion the legal and judicial machinery for the purpose of bringing about the above damage and detriment, unless the individual threatened shall immediately "Today" forward a check to the association for the sum demanded.

It is unnecessary to here set out the exact form of the various documents and written statements alleged to be so used by the defendants. Such documents are prepared with generous use of large black type, large red type, and glaring underscoring of legal phrases, with very conspicuous seals attached. They are designed to terrorize the individual addressed, and to present to him as a monster of retribution the law, the courts of justice, and various and sundry processes, some legal and judicial, and some extrajudicial, and unkown to the law, and all claimed by defendants to be subservient to defendants in carrying out their threats. While it is hardly possible that such threats should be taken seriously by an enlightened people, that is no argument that any such association has the right to engage in such chicanery in the name of the law, and under the pretense of legal and judicial sanction, and with a pretended authority and privilege to so employ and use legal and judicial process and procedure. And for that matter, the science of the law and the limits of court authority and procedure are not thoroughly well known to every citizen, and such practices, if wholly unchecked, might result in the evils anticipated and alleged by plaintiff.

The defendants' demurrer admits the truth of the allegations of the petition, together with all reasonable inferences that may be drawn therefrom, and the foregoing statements indicate some of the matters alleged and some of the inferences that may be reasonably drawn from the allegations of the petition.

We do not assert as a matter of final fact that the defendant did engage in all of the practices alleged by the plaintiff and referred to above, but when these allegations are tested by demurrer, we must assume that they are fully true, and that the defendant does engage in all of the alleged practices.

With that in mind we turn to a consideration of the plaintiff's right and authority to seek to restrain such acts by injunction.

The act creating the plaintiff as a legal association provides in section 2 (4211, O. S. 1931) that the State Bar shall have a seal and may sue and be sued, and in section 23 (4232, O. S. 1931) that the association, acting through its Board of Governors, shall have the power to aid in the advance of the science of jurisprudence and in the improvement of the administration of justice. The purpose of the act was to create the association to be known as the State Bar of Oklahoma, with a membership to be composed of persons authorized to practice law, and to generally have and possess the power to regulate the practice of law in Oklahoma, and to aid and assist the various courts in the administration of justice. The plaintiff association acts as an aid or an arm of the judicial system of the state in the prevention of the unauthorized practice of law, and may, and often does, proceed against persons unfit to hold themselves out as lawyers, or to engage in the practice of law. The passage of this act is a distinct effort toward improvement in the general government and regulation of the practice of law and the administration of justice.

The plaintiff association, since its creation in 1929, has been an agent for great good to the state, and to the practice of law and to the administration of justice in the state. It has rendered services of great value, not only to the lawyers and to the courts, but to the general public, and in final analysis, the general purpose and plan of the plaintiff association and of the law creating it is the further protection of the general public in affairs pertaining to the practice of law and the administration of justice.

The State Bar Act provides that the members of the State Bar shall be those entitled and licensed to practice law (sections 4212, 4215, 4216, O. S. 1931), and that none may practice law except active members of the State Bar (section 4255, O. S. 1931), and that the State Bar shall be governed by its Board of Governors and shall have the powers and duties in the act conferred (section 4229, O. S. 1931), and, in substance, be charged with the enforcement of the provisions of the act (section 4230, O. S. 1931).

The defendant says on page one of its brief:

"The defendants do not challenge the sufficiency of the petition's allegations to constitute a 'practice of the law.'"

Yet it must be clear that our law nowhere allows or authorizes a corporation to engage in the practice of the law, and the defend-

ant not being eligible for membership in the State Bar, and not being an active member of the State Bar, any acts engaged in that would constitute the practice of law would be in direct conflict with the provisions of the State Bar Act.

The state has a vital interest in the regulation of the practice of law for the benefit and protection of the people as a whole, and this act was adopted in furtherance of a wholesome public policy. Clearly it was intended by the Legislature to create the State Bar, vested with power to enforce the provisions of the State Bar Act by whatever lawful means it might employ for that purpose. Here the State Bar enters a court of equity to enjoin the defendants and abate the wrong of defendants' continued actions. No good reason is shown why the plaintiff should not be freely permitted so to do.

If it be true that the defendants are engaging in the alleged practices, then they are highly improper, for they are wholly unauthorized, and are illegal, and they tend strongly to discredit and bring into disrepute, in so far as the defendants are able to do so, the practice of law and the administration of justice, and beyond any question such practice should cease and should be terminated by appropriate legal and judicial procedure. Surely it cannot be said that the courts are powerless to restrain actions calculated to produce such dire consequences.

The defendants urge that plaintiff may not maintain the action because the plaintiff association has no direct financial interest. It is true the plaintiff has no direct financial interest, but that is not the basis of plaintiff's action. However, if the defendant's acts and conduct should continue until the public confidence is destroyed in the practice of law and the administration of justice, then that result would be to the financial detriment of the plaintiff. The purpose of this litigation, however, is not to enrich the plaintiff association, or any member thereof, but to abate the practices of the defendants for the reasons heretofore stated. In keeping with the general plans and purposes of the creation of the plaintiff association, we have no doubt of the authority of the plaintiff to maintain the proceedings and to obtain the relief sought, since the act specifically authorizes the plaintiff to sue and be sued, and authorizes and requires the State Bar to enforce the provisions of the State Bar Act.

The defendants' argument that plaintiff is not the real party in interest might be persuasive if the action were one to recover damages on account of wrongful acts of the defendant, but that argument is without force here in view of the authority and power delegated to the plaintiff by the State Bar Act, and in view of the fact that this action is brought, not for financial gain, but in the interest of all the people, to prevent the defendants' continued wrongful and unauthorized acts.

The case of In re Co-Operative Law Company (N. Y.) 92 N. E. 15, dealt with the evil effects of the unauthorized practice of law by corporations, and in that case it was said: "The degradation of the bar is an injury to the state."

The case of People v. California Protective Corporation (Cal.) 244 P. 1089, was an action to enjoin the corporation from engaging in unlawful practice of law, and therein it was said:

"The wrong of which complaint is made is of public, not private concern."

In Board v. Blair (Utah) 196 P. 221, the Supreme Court of Utah held that the rights and powers given to the Board of Medical Examiners was not for the benefit or protection primarily of the members of the medical profession, but rather the general protection of the health of the people.

In Allopathic State Board of Medical Examiners v. Fowler (La.) 24 So. 809, the State Board, which had been created under an act to generally regulate the practice of medicine, etc., sought an injunction against Fowler to restrain him from engaging in the unauthorized practice of medicine. The lower court granted the injunction, and upon appeal that action was sustained.

In Kentucky State Board of Dental Examiners v. Payne (Ky.) 281 S. W. 188, the plaintiff sought to enjoin the defendant from engaging in unauthorized practice of dentistry. The trial court there, as in the case at bar, sustained a demurrer to the petition. That action of the trial court was reversed by the Court of Appeals. That opinion presents a discussion of many of the questions here involved. It was held that the action might be maintained and the practice of the defendant might be restrained by injunction, regardless of the fact that the defendant, in committing the acts complained of, might also in the commission thereof be guilty of a crime, or be subjecting himself to a statutory penalty.

One of the contentions made by the defendant, the Retail Credit Association et. al., is that the actions of the defendant may not be prohibited by injunction, because such acts, if they constitute the unauthorized practice of law, are punishable as misdemeanors.

In Choctaw Pressed Brick Co. v. Townsend et al., 108 Okla. 235, 236 P. 46, this court held, in substance, that where injunction is warranted, the mere fact that crime or statutory offense must be enjoined as incidental thereto, will not deprive the court of jurisdiction.

The State Bar Act does provide (section 4257, O. S. 1931) that any unauthorized person who engages in the practice of law shall be guilty of a misdemeanor. That statute, however, is not purely or primarily a criminal statute. The act was passed to further regulate the practice of law, to provide for the qualifications and licensing of those who should practice law, and to create the State Bar and confer upon it the power and authority set out in the act. As an incident thereto it made persons guilty of a misdemeanor who practiced law in violation of the act. That provision was evidently adopted as an addition or positive deterrent to the unauthorized practice of law by those not entitled to practice. It is difficult to find in this provision any possible restriction. or limitation upon the duties or power of the State Bar. The primary purpose of the act was not to create a crime, but to provide for the public welfare. In the body of the opinion in Kentucky State Board v. Payne, supra, in dealing with a similar question it was said:

"The criminal feature was only intended as a deterrent and a partial restraint, and was inserted for the purpose of admonishing the practitioner that he must comply with the salutary terms of the statute, and which compliance was the chief purpose in enacting the statute, the penal section being merely incidental and collateral thereto; hence the board, by the express terms of the statute, was given power to enforce its provisions. Manifestly the Legislature did not intend to limit the means of enforcement to the small and insignificant penalty provided in section 18, (section 2636-18) of the act. The board could make little progress towards enforcing the act, if it was confined to prosecutions to recover the small penalties. If an arrest was made and the highest penalty administered, the practice could be resumed, and, perhaps, many times the amount of the penalty could be collected from ignorant and confiding patrons until the second violation was discovered, if at all, and in the meantime the mischief intended to be prevented would continue unabated."

In Unger v. Landlord's Management Corporation (N. Y.) 168 Atl. 229, and in Paul v. Stanley (Wash.) 12 P. (2d) 401, it was held that the mere fact that the practice of law without a license was punishable criminally did not prevent the issuance of an injunction to prevent its continuance.

It is, of course, true that the injunctive power and authority of courts of equity may not be invoked merely for the purpose of preventing persons from committing crimes, yet the foregoing authorities clearly dispose of defendants' contention that the injunctive remedy may not be applied here.

The trial court was in error in sustaining defendants' demurrer and in rendering judgment dismissing plaintiff's action. That judgment is reversed, and the cause is remanded, with directions to overrule defendants' demurrer and proceed consistent with the views expressed in this opinion.

RILEY, C. J., CULLISON, V. C. J., and SWINDALL, McNEILL, OSBORN, and BAYLESS, JJ., concur. ANDREWS and BUSBY, JJ., absent.