(No. 6355.   July 2, 1936.)

JAMES A. WAYNE, J. E. GYDE and F. C. KEANE, by Direction of the Idaho State Bar, Petitioners, v. MURPHEY–FAVRE AND COMPANY, a Corporation, DANIEL MURPHY, WILLIAM HANSEN and E. W. O'MEARA, Defendants.

[59 Pac. (2d) 721.]

James A. Wayne, J. E. Gyde and F. C. Keane, for Petitioners.

John L. Fitzgerald, for Defendants Daniel Murphy, William Hansen and E. W. O'Meara.

Cox & Ware, for Defendants Murphey-Favre and Company.

GIVENS, C. J.—Defendant, Murphey-Favre and Company, admittedly a corporation, entered into an agreement with the other defendants, county commissioners of Shoshone County, to act for the county as fiscal agent in refunding bonds of said county; the agreement among other provisions containing the following stipulations pertinent to the cause herein:

" . . . . and, in the judgment of the governing body of said First Party it will be to its financial interest to employ the expert services of the Second Party hereto and to employ

expert legal services in connection with the authorization and issuance of said bonds;

"NOW, THEREFORE, the First Party does hereby employ the Second Party for the purpose of receiving from said Second Party its expert services, advice and assistance in connection with the preparation, adoption and conduct of the written, and other, proceedings necessary and proper to be taken by this governing body and by the members thereof, and by its officials in connection with the ordering, authorization and issuance of such refunding bonds, *it being a condition of the foregoing employment of the second party that the second party shall obtain and employ for the purpose of such services and in connection therewith the expert legal services of some bond attorney, or attorneys, specializing in municipal securities and who shall render such expert legal services in connection with all of the foregoing matters to the end that said proposed bonds when issued shall be valid and that said attorney, or attorneys, shall render an opinion declaring the validity of all such proceedings and of such bonds when issued;* and that the second party shall further provide and furnish a purchaser (which said Second Party promises to do and furnish) of such refunding bonds, ready, able and willing to purchase the same, at and upon the following denominations, maturities, interest rate and terms; . . . . " (Italics ours.)

Petitioners, members of the Bar, under direction of the State Bar Commission, instituted these proceedings against defendants on the theory that the agreement constituted the practice of law by defendants, whereby, under section 3–104, I. C. A., the defendants were guilty of contempt of court.

The defendants' position is clearly and concisely stated in their brief as follows:

"It is conceded that the 'practice of law' includes the performance of all services requiring the skill of lawyers. It is admitted that Murphy-Favre and Company is a corporation. It is conceded that a corporation cannot legally practice law. It is denied that Murphy-Favre and Company has engaged in the practice of law either directly or indirectly."

The sole question presented, therefore, is whether the agree-

ment by the Murphey-Favre Company, being a corporation, to furnish legal services to the county constituted the practice of law. *In limine* since no conspiracy is charged, admitted or proved as between the county commissioners and the Murphey-Favre Company, the commissioners were in no event guilty of the practice of law, and therefore are not in contempt of court. We therefore need not further consider such phase of the controversy.

■ Defendants contend first, that a corporation may employ lawyers in any matter where it has a direct primary interest. That may be readily conceded but it does not answer the question involved herein because the agreement specifically provides that the county shall receive from the Murphey-Favre Company its expert services, advice and assistance, " . . . . it being a condition of the foregoing employment of the second party that the second party shall obtain and employ for the purpose of such services and in connection therewith the expert legal services of some bond attorney, or attorneys," etc. Thus clearly Murphey-Favre and Company was obligated to render to the county two services, each from the agreement and the argument presented by the defendants herein apparently as important as the other. The first, primary and financial, in finding a purchaser for the bonds, and the other secondary and legal in having the bonds in proper form and approved by a competent attorney. Such service, to repeat, as stated in the agreement above to be rendered by Murphey-Favre and Company to the county.

■ The following propositions of law succinctly and *seriatim* lead to the inevitable conclusion that Murphey-Favre and Company, a corporation, was illegally practicing law. First, being a corporation it is conceded that it cannot itself practice law, and it may not do indirectly what it cannot do directly. (Note in 73 A. L. R. 1327, and cases there cited; 2 R. C. L. 946; *People ex Rel. Los Angeles Bar Assn. v. California Protective Corp.*, 76 Cal. App. 354, 244 Pac. 1089, at 1091; approved in *In re Eastern 'Idaho Loan & Trust Co.*, 49 Ida. 280, 288 Pac. 157, 73 A. L. R. 1323; *Whelan v. Bailey*, 1 Cal. App. (2d) 334, 36 Pac. (2d) 709;

*Pacific Employers Ins. Co. v. Carpenter,* 10 Cal. App. 592, 52 Pac. (2d) 992; *In re Co-operative Law Co.,* 198 N. Y. 479, 92 N. E. 15, at 16, 139 Am. St. Rep. 839, 19 Ann. Cas. 879, 32 L. R. A., N. S., 55; *Unger v. Landlords' Management Corp.,* 114 N. J. Eq. 68, 168 Atl. 229; and see *State v. James Sanford Agency,* 167 Tenn. 339, 69 S. W. (2d) 895; *Land Title Abstract & Trust Co. v. Dworken,* 129 Ohio St. 23, 193 N. E. 650.) While herein there was but the single transaction, similar agreements providing for a continuous furnishing of legal services have been prohibited. (*People v. Merchants Protective Corp.,* 189 Cal. 531, 209 Pac. 363; *State v. Retail Credit Men's Assn. of Chattanooga,* 163 Tenn. 450, 43 S. W. (2d) 918; *People v. People's Stock Yards State Bank,* 344 Ill. 462, 176 N. E. 901, at 907; and see *In re Otterness,* 181 Minn. 254, 232 N. W. 318, 73 A. L. R. 1319; *Boykin v. Hopkins,* 174 Ga. 511, 162 S. E. 796; and *In re Opinion of the Justices,* (Mass.) 194 N. E. 313, at 317.) And one instance of practicing law is as much practicing law as many.

█ Murphey-Favre and Company, therefore, by this contract, in effect obligated itself to practice law illegally, and in its admitted performance thereof, under the authorities above set forth, did work amounting to the illegal practice of law and therefore is in contempt of this court and so adjudged, and as punishment therefor, because it does not appear that its conduct was wilfully or intentionally violative of the statute, required to pay a nominal fine of $500. (*In re Brainard,* 55 Ida. 153, 39 Pac. (2d) 769.) Said fine to be paid to the clerk of this court pursuant to section 19–4801, I. C. A.

Budge, Holden and Ailshie, JJ., concur.

Morgan, J., deeming himself to be disqualified, did not sit with the court nor participate in the decision.