Howard L. Bump et al., Appellees, v. W. Thomas
Barnett, Appellant.

No. 46604.

December 12, 1944.

C. S. Missildine and Donald Evans, both of Des Moines, for appellant.

Howard L. Bump, H. S. Hunn, Haemer Wheatcraft, and C. D. Royal, all of Des Moines, for appellees.

SMITH, J.—Plaintiffs are Iowa lawyers composing a "Committee of the Unauthorized Practice of Law" of the Polk County Bar Association. Defendant, admittedly not a lawyer, is alleged to be conducting a business and performing acts which constitute the unauthorized practice of law. The record does not set out the evidence but shows instead the trial court's findings of facts. The parties stipulate the record, as presented, to be all that is necessary for the purpose of the appeal.

The findings recite: That defendant advertised, under the trade name "Public Service, W. Thomas Barnett, Manager," that he could repossess automobiles and make collections, both wholesale and retail; that both by personal solicitation and letters to various creditors he held himself out to be authorized to make collections; that he contracted in writing with various creditors to collect their accounts on a commission basis; that by such contracts the creditors made defendant their agent and attorney in fact, with power to do anything the creditors themselves could do in adjusting, settling, and collecting the accounts, including bringing suit in the name of defendant, as assignee, receiving payments, endorsing checks and money orders, and issuing receipts, the consideration to defendant being fixed by a stated commission schedule; in case of litigation defendant was to pay all court costs and employ lawyers if need be at his own expense.

It was found further that defendant has brought, in his own name as assignee, more than fifteen hundred actions in one justice court and fifty-seven Class B actions in municipal court, he himself preparing the original notices, submitting the necessary proofs, and causing executions to issue on the judgments, and that he has brought a large number of Class A cases in

municipal court, and also cases in district court, in his own name as assignee of creditors, employing an attorney at law to appear for him in offering proofs, taking judgments, and issuing executions.

The trial court further found that he employed the lawyer on a fee basis and directed the method of handling the trials and that the lawyer did not in any case represent the creditor nor did the creditor employ the attorney, know who the attorney was, or pay the attorney's fees.

It was found that defendant in various instances sent to alleged debtors a paper entitled in red ink, "Final Notice Before Legal or Statutory Action," giving the title, "W. Thomas Barnett v. [naming debtor]," which paper advised debtor that "Public Service and party of the first part" were sending the notice "in order that you may make satisfactory arrangements with the proper authority, W. Thomas Barnett, Assignee, Plaintiff * * * and show good and sufficient cause why such action should not be brought * * * for the purpose of securing judgment for the sum of $........ * * * account of [name of creditor] original creditor * * *. Said judgment to be collected and enforced with powers, privileges and penalties given by law at the full discretion of the aforesaid W. Thomas Barnett, Assignee, Plaintiff." The paper was impressed with a red seal, "Public Service, W. Thos. Barnett," and at the bottom appeared this curious language:

"KNOW ALL MEN BY THESE PRESENTS:

Resolved, and be it enacted, that Plaintiff shall not commence, or cause to be commenced, any court action, with the intention of making public display of the judgment thus obtained, and in all cases shall give the party or parties against whom judgment is proposed to be taken, a notice in writing of not less than ten (10) days from the commencement of such action, and it's further required that a copy of this special resolution shall be displayed with the service of such notice.

The laws of this State provide that all persons found guilty of obtaining goods or any thing of value under false pretense or misrepresentation shall be punished by fine or imprisonment, or both, as the case shall be.''

Another form of warning to debtors was found to have been used by defendant, of which the following is a sample:

"State of Iowa
County of Polk
................ [name of creditor]
 W. Thomas Barnett, Assignee,
 Creditor,
 vs. Amount due $.........
................
 Debtor.

To the above named debtor:

You are hereby notified that the said creditor is about to institute legal proceedings for garnishment against you and your employer in the courts having jurisdiction over this subject matter. You and your employer will be summoned to appear before said courts. Your employer's time books will be summoned into court by subpoena *duces tecum* to show what is due you and that so much of same may be applied towards the payment of this debt as provided by statute.

Any arrangements as to settlement you may wish to make in avoidance of the proceedings above mentioned should be consummated at this office within a period of 5 days from date hereof.

Dated at Des Moines, Iowa, this 15th day of March, 1944.
 W. Thomas Barnett, Assignee
(Seal) 503 Southern Surety Building,
 Des Moines, 9, Iowa.
 Ph. 3-5265."

It was also found that defendant caused judgments, taken in justice court and municipal court in his own name as assignee, to be transcripted to district court and caused executions to issue thereon and garnishments to be made, some of which were later released by the district court upon a showing that judgment debtors were married and the heads of families and that the garnished funds represented exempt wages.

No claim is made that these findings are not within the pleaded issues or are not supported by the evidence. It is, however, contended that they do not support the court's conclusions of law and the decree against defendant.

The decree enjoined defendant from soliciting or accepting claims or debts for collection, by assignment or other form of contract, under which payment to the assignor or creditor is dependent on collection from the debtor and which contemplates or authorizes suit to be brought in the name of either party by the defendant herein or by an attorney employed and paid by him; from instituting or maintaining actions for others, from advertising or holding himself out as willing and able to repossess automobiles or other personal property for others by resort to legal means therefor; and from in any wise engaging in the practice of law in any Iowa court, by himself or through any attorney employed by him. We will refer later to paragraph 3 of the decree, not embodied in the foregoing summary.

I. Appellant argues that our statutes authorize the assignment of a claim or debt and vest the assignee with the right to maintain action thereon in his own name, citing sections 9451 and 9453, Code of 1939; that the assignee is the real party in interest even though the assignment is for collection only, citing Carson Pirie Scott & Co. v. Long, 222 Iowa 506, 268 N. W. 518; and that the assignee in such cases is not engaged in the unauthorized practice of law, citing Carson Pirie Scott & Co. v. Long, supra; Washington State Bar Assn. v. Merchants' Rating & Adjusting Co., 183 Wash. 611, 49 P. 2d 26; Cohn v. Thompson, 128 Cal. App. Supp. 783, 16 P. 2d 364.

He combines with these propositions the further premise that a party may try his own case even in a court of record, citing Arthaud v. Griffin, 202 Iowa 462, 210 N. W. 540; and that under our statute a party need not be admitted to the bar in order to appear for another in justice court where appearance is permitted by agent, citing section 10526, Code of 1939; Brown v. Newman, 13 Iowa 546; United Securities Corp. v. Pantex Pressing Machine, Inc., 98 Colo. 79, 53 P. 2d 653. He contends these propositions justify and authorize his activities as above described.

The legality of assignments of choses in action with right of the assignee to litigate same in his own name, the right of a party to try his own case in any court, and the fact that appearance by agent in justice court is permitted under our statute are not questioned here. What is questioned is the right of

appellant to hold himself out as one specially equipped to render services requiring special legal training and knowledge and the right to make a business of habitually rendering such services under the claimed protection of these propositions.

Take first the right of assignment and of the assignee to bring action in his own name on the assigned chose. The Carson Pirie Scott case fairly illustrates an exercise of these rights. It did not involve in any way a practice by plaintiff of soliciting claims for litigation or collection, of holding itself out as able to repossess property, or of contracting for the conduct of litigation. Plaintiff in that case was one of several creditors of the defendant. The claims of the others were assigned to plaintiff so all could be sued on in one action. It reveals a legitimate exercise of the statutory powers referred to above.

Other examples could no doubt be imagined. Undoubtedly, one might, for example, engage in the business of buying claims as investments and might take assignments of them to himself and maintain actions thereon in his own name. But when he does not purchase the claims and only takes colorable assignment of them so he may render or cause to be rendered legal service to others, and holds himself out as engaged in such practice, it is a quite different matter. In one case he is dealing in property on his own account; in the other he is selling service and merely adopting the guise of an investor to conceal the real nature of his operations.

And so with the right of a plaintiff to try his own lawsuit in any court. If it is really his own litigation, the right is unquestioned and unquestionable. But if it is another's lawsuit or action, placed in plaintiff's name so as to enable him to render service to that other under the pretext of trying his own case, it does not come under the protection of the rule. And if it is done by one who engages in it as a business and holds himself out as peculiarly qualified or equipped, it comes under the ban of illegal practice of law.

So likewise with the argument that because our statute, section 10526, Code of 1939, provides that in justice court either party may appear "in person or by agent," appellant is thereby permitted to engage in the practice regularly of representing

clients in justice courts. The conclusion does not logically follow. The salutary purpose of the statute may not thus be perverted to encourage the growth of a class of "justice court lawyers," unfettered by the rules that bind licensed attorneys and without training in law and ethics. Such rules are just as important in justice courts as in courts of record—more important, perhaps, because the justice of the peace is often one untrained in such matters—and certainly such safeguards are not less important by reason of the fact, if it be a fact, that justice courts are "poor men's courts." The poor man is entitled to the same professional service as are more favored litigants.

Appellant quite misses or evades the point when he argues:

"But if a transaction involving a single assignment of an account is valid, when and how does it become illegal by reason of repetitions by an assignee with different assignors? If this be the proper test as to when the practice of taking assignments of accounts for the purpose of collection becomes the practice of law, there is no standard set forth in the findings or Decree by which a party may test his conduct in order to avoid encroachment upon the legal field."

It is not a question of volume or number of transactions but of intent to engage in the business or occupation as a profession. The housewife who sells off an item or many items of unwanted furniture does not thereby become a merchant or dealer. But if she advertises to her neighbors that she is equipped to render similar service to them and solicits their patronage she becomes one.

And while volume or number is not the test, evidence of numerous transactions of the same kind tends to throw light on the nature of the individual's activities. When proof of such numerous instances is combined with evidence of solicitation and advertisement asking to be entrusted with the conduct of just such transactions, the conclusion that the individual is regularly engaged in the practice becomes irresistible.

We are convinced the record here shows that appellant is engaged in the illegal practice of law and should be enjoined. Our conclusion finds ample support in many cases, including our

own decision in Bump v. District Court, 232 Iowa 623, 633, 5 N. W. 2d 914, 919. That case involved contempt proceedings while this is an injunction suit; but the same or similar issues were involved. We held that either form of proceeding is proper.

In that case we also in effect held that "advertising and solicitation of contracts, the performance of which will involve the rendition of legal services" constitute the practice of law; and that "the furnishing or agreeing to furnish counsel by persons not members of the bar constitutes the illegal practice of law."

Both these propositions are amply fortified by citations of decisions from other states. And they sustain the decision of the trial court in the instant case. In addition to authorities cited in the Bump v. District Court case might be cited, State v. James Sanford Agency, 167 Tenn. 339, 69 S. W. 2d 895; State ex rel. McKittrick v. C. S. Dudley & Co., 340 Mo. 852, 102 S. W. 2d 895; Depew v. Wichita Assn. of Credit Men, 142 Kan. 403, 49 P. 2d 1041; State ex rel. v. Retail Credit Men's Assn., 163 Tenn. 450, 43 S. W. 2d 918.

Both Washington State Bar Assn. v. Merchants' Rating & Adjusting Co., supra, 183 Wash. 611, 49 P. 2d 26, and Cohn v. Thompson, supra, 128 Cal. App. Supp. 783, 16 P. 2d 364, cited by appellant, appear to support his contention. But in each the decision is based on, or at least colored by, statutory provisions not present here. The Cohn case is distinguished in State v. James Sanford Agency, supra, 167 Tenn. 339, 69 S. W. 2d 895, 898; also in Bump v. District Court, supra, 232 Iowa 623, 637, 5 N. W. 2d 914. We are not disposed to follow them in face of the overwhelming authority the other way.

We refrain from attempting to frame a complete, all-inclusive statement of what constitutes the practice of law, that might, in some future case, embarrass us. "Sufficient unto the day is the evil thereof." It is enough to say that the activities of appellant as shown by this record are clearly within any definition that could be culled from present-day decisions. It is not a borderline case.

II. Paragraph 3 of the decree enjoins appellant "from issuing or directing the course of an execution, or doing

316

any act himself or by his agents, or by attorneys employed by him, to collect any judgment in his name as assignee, except such judgments as are his bona fide property and not rendered on a claim obtained by him, for collection by assignment.''

Appellant complains of this as a collateral attack on the judgments that have been procured by appellant in his own name as assignee of the claims upon which the judgments are based. He says:

''The effect of the Order is that the assignee is prevented from collecting and *accounting to the assignor;* and the assignor is prevented by the same judgment from the institution of another suit and securing another judgment.''

We do not have the judgments before us and do not know what form or forms they may have taken. There should, however, be no uncertainty in the effect upon them of the decree herein. We do not deem these judgments void or voidable by reason of appellant's unauthorized practice of law in obtaining them. The decree should not prevent their enforcement. Paragraph 3 should be modified to permit appellant to enforce them provided that in so doing he does not engage in further unauthorized practice of law.

 III. There is an aspect of appellant's conduct here not especially emphasized in the trial court's conclusions of law and decree or in argument of counsel. Courts have on occasion condemned the use of notices, simulating legal process, designed to intimidate the individual addressed into compliance with the demand made upon him.

The so-called ''Final Notice Before Legal or Statutory Action'' and the warning that the creditor is about to commence garnishment proceedings, that appear in this record, are fairly typical. Concerning such devices the Oklahoma Supreme Court has said:

''Such documents are prepared with generous use of large black type, large red type, and glaring underscoring of legal phrases, with very conspicuous seals attached. They are designed to terrorize the individual addressed, and to present to him as a monster of retribution the law, the courts of justice, and

various and sundry processes, some legal and judicial, and some extrajudicial, and unknown to the law, and all claimed by defendants to be subservient to defendants in carrying out their threats. While it is hardly possible that such threats should be taken seriously by an enlightened people, that is no argument that any such association has the right to engage in such chicanery in the name of the law, and under the pretense of legal and judicial sanction, and with a pretended authority and privilege to so employ and use legal and judicial process and procedure.'' State Bar v. Retail Credit Assn., 170 Okla. 246, 248, 37 P. 2d 954, 956.

See, also, State ex rel. Freebourn v. Merchants' Credit Service, 104 Mont. 76, 66 P. 2d 337, 343.

Such methods of collection are not proper. Their use by unlicensed persons or agencies furnishes one illustration of the wisdom of preventing such persons and agencies from usurping the attorney's prerogatives. Surely no attorney would be permitted to adopt such tactics. One who is alleged to be a debtor may or may not in fact be one. In either event, the orderly processes of the law should not be parodied or simulated in an effort to frighten him into payment.

IV. The contracts which appellant solicited and entered into not only authorized him to bring suit in his own name as assignee but provided that in case of litigation he was to pay all court costs.

Such contracts, if made by a regularly admitted attorney at law, would be champertous and unenforceable. See Barngrover v. Pettigrew, 128 Iowa 533, 104 N. W. 904, 2 L. R. A., N. S., 260, 111 Am. St. Rep. 206; Adye v. Hanna, 47 Iowa 264, 29 Am. Rep. 484. Needless to say, they are no less champertous and unenforceable when made by one engaged in unauthorized practice. The lawyer who would enter into such arrangements would be subject to discipline by the court to the possible extent of disbarment. There can be no doubt of the right and duty of the court to enjoin the unlicensed person from similar conduct. The considerations of public policy that forbid it in one case are equally persuasive in the other.

V. In appellant's brief appears some implied criticism of

paragraph 4 of the petition which states that the suit is brought "on behalf of the plaintiffs as practicing attorneys and of other attorneys similarly situated." The allegation, properly interpreted, is proper. It does not mean that the purpose is to protect lawyers from unwanted competition. It refers rather to the duty, as well as the right, of attorneys to preserve the integrity of their profession, in the interest not merely of its members but of the public generally, against assaults from without as well as from unfaithfulness within. The performance of this duty is frequently made especially difficult because the motives back of such performances are so easily misunderstood or misrepresented.

We do not understand that appellees' motives here are criticized by appellant. But we deem it proper thus to keep straight our concept of the function of lawyers in maintaining proceedings of this character.

The decree will be modified as suggested in Division II of this opinion, and as thus modified will be affirmed.—Affirmed.

All JUSTICES concur.