**IOWA SUPREME COURT COMMISSION ON UNAUTHORIZED PRACTICE OF LAW, Appellee,**

v.

**A–1 ASSOCIATES, LTD., Appellant.**

No. 99–0536.

Supreme Court of Iowa.

March 21, 2001.

Alfredo Parrish of Parrish, Kruidenier, Moss, Dunn & Montgomery, L.L.P., Des Moines, for appellant.

Thomas J. Miller, Attorney General and Grant K. Dugdale, Assistant Attorney General, for appellee.

W. Don Brittin, Jr., of Nyemaster, Goode, Voigts, West, Hansell & O'Brien, P.C., Des Moines, for amicus curiae Iowa Collectors Association, Inc.

NEUMAN, Justice.

The district court enjoined A–1 Associates, Ltd., a collection agency representing clients in small claims court, from engaging in the unauthorized practice of law. A–1 contends on appeal that Iowa Code sections 539.1, 539.3, and 631.14 (1997) specifically permit its litigation activities. We conclude, as did the district court, that these statutes do not provide the authorization A–1 seeks. We therefore affirm the injunction issued by the district court.

The parties submitted the case on the following stipulated facts. Plaintiff, Iowa Supreme Court Commission on Unauthorized Practice of Law, was created by court rule "for the abatement of the unauthorized practice of law." Court Rule 118A. Defendant, A–1 Associates, Ltd., is an Iowa corporation providing debt collection services for creditors in central Iowa. Since at least 1982, A–1 has engaged in the practices that are the subject of this controversy.

A–1's debt collection services range from contacting debtors by letter and telephone to instituting legal action. The creditor receives the proceeds of any recovery made by A–1 with a fixed percentage (thirty to fifty percent) retained by A–1 as compensation for its services. This financial arrangement is outlined by letter to each client.

A–1 also obtains an assignment of the account as part of its agreement with the creditor. Based on the written assignment, A–1 may commence an action in small claims court, either pro se or by an attorney selected and retained by A–1. In those cases in which A–1 does not retain

counsel, its employees prepare the small claims original notice on forms provided by the clerk of court, appear at trial, and prepare the necessary legal documents to collect any judgment entered. A-1 initiates legal action only in consultation with the creditor.

Although not recited as part of the stipulation, it is evident from the record and arguments of counsel that A-1's employees are not admitted to practice law in this state. It is likewise apparent that the Commission has no quarrel with the operation of the collection agency, per se. Its focus is on A-1's activities that involve seeking relief in the courts based on assignments in which the creditor retains an interest in the underlying debt.

The district court ruled that A-1's litigation activities on behalf of its clients constitute the unauthorized practice of law. It permanently enjoined A-1 from engaging in such practices. *See* Court Rule 118A.1 (authorizing district court to enter appropriate dispositional order following hearing). This appeal by A-1 followed.

## I. Scope of Review.

█ "A request for an injunction invokes the district court's equitable jurisdiction." *Sear v. Clayton County Zoning Bd. of Adjustment,* 590 N.W.2d 512, 515 (Iowa 1999). Thus, our review on appeal is de novo. *Id.*

## II. Issue on Appeal.

The Commission argued in the district court that a debt collection agency such as A-1 engages in the unauthorized practice of law

> when, as a regular part of its business, it procures or takes assignments for collection where the creditor still retains an interest in the underlying debt and the collection agency institutes and maintains legal action to recover the unpaid debt.

A-1 contends on appeal that the district court, by accepting the Commission's argu-

ment, has misapplied a clear legislative directive to the contrary. That directive, A-1 argues, may be found in Iowa Code sections 539.1, 539.3, and 631.14.

A. *History.* Before turning to the statutes upon which A-1 relies, we think it helpful to review the source of the Commission's agitation. In 1944 this court considered a nearly identical case, *Bump v. Barnett,* 235 Iowa 308, 16 N.W.2d 579 (1944). As in the case before us, Barnett engaged in the business of collecting delinquent accounts on a commission basis. The record revealed that he brought in his own name—as assignee—over 1500 actions in "justice court" pursuant to section 10526 of the 1939 Code of Iowa, which permitted parties in such courts to appear "in person or by agent." *Barnett,* 235 Iowa at 313, 16 N.W.2d at 582. Barnett argued that the law of assignments, pro se practice and the statute's own language, permitted his litigation activity. *Id.* at 313–14, 16 N.W.2d at 582.

This court rejected Barnett's rationale and affirmed the trial court's decision to enjoin his practices. *Id.* at 314–15, 16 N.W.2d at 583. We began by reasoning that neither the recognized right of parties to assign choses in action nor the equally well-settled right to try one's own case in court resolved the question of whether Barnett's litigation activity on behalf of others constituted the unauthorized practice of law. *Id.* at 313, 16 N.W.2d at 582. Concerning the creditors' purported assignment of their claims to Barnett, we said:

> Undoubtedly one might for example engage in the business of buying claims as investments and might take assignments of them to himself and maintain actions thereon in his own name. But when he does not purchase the claims and only takes colorable assignment of them so he may render or cause to be rendered legal service to others and holds himself out as engaged in such practice, it is a quite different matter. *In one case he is dealing in property on his own ac-*

*count, in the other he is selling service and merely adopting the guise of an investor to conceal the real nature of his operations.*

*Id.* (emphasis added). In a similar vein, we rejected Barnett's claim of pro se status, saying:

> If it is really his own litigation the right is unquestioned and unquestionable. But if it is another's lawsuit or action, placed in plaintiff's name so as to enable him to render service to that other under the pretext of trying his own case, it does not come under the protection of the rule. And if it is done by one who engages in it as a business and holds himself out as peculiarly qualified or equipped, it comes under the ban of illegal practice of law.

*Id.*

Finally, we held in *Barnett* that the statutory reference to appearing in justice court "in person or by agent" did not authorize someone like Barnett to make a business or "profession" of representing clients before a justice of the peace. *Id.* at 313–14, 16 N.W.2d at 582–83. To do so, we reasoned, would lower practice standards by encouraging the growth of a class of " 'justice court lawyers,' unfettered by the rules that bind licensed attorneys and without training in law and ethics." *Id.* at 314, 16 N.W.2d at 583. We recognized that such a trend was not in the public's interest and the court's decision to enjoin it enjoyed ample support in our own case law as well as that of other jurisdictions. *Id.* at 315, 16 N.W.2d at 583; *see Bump v. Dist. Ct.,* 232 Iowa 623, 635–40, 5 N.W.2d 914, 920–22 (1942) (discussing authority and enjoining non-lawyer's practice of soliciting claims for tax refunds and advising clients concerning their recovery in quasi-judicial tribunals).

B. *Amended legislation.* A–1 insists on appeal that the collection activities condemned in *Barnett* as unauthorized legal practice have been legislatively authorized, since 1982, by specific amendments to sections of the Iowa Code pertaining to as-

signments and small claims actions. *See* 69 Iowa Acts ch. 1235 (1982) (now codified at Iowa Code §§ 539.1, 539.3, and 631.14). Section 539.1, governing the assignability of non-negotiable instruments, provides in pertinent part:

> Bonds, due bills, and all instruments by which the maker promises to pay another . . . are assignable by endorsement on the instrument, or by other writing. The assignee, *including a person who takes assignment for collection in the regular course of business,* has a right of action on them in the assignee's own name, subject to any defense or counterclaim which the maker or debtor had against an assignor of the instrument before notice of the assignment.

(Emphasis added.) Iowa Code section 539.3, concerning assignments of open accounts, states:

> An open account of sums of money due on contract may be assigned. The assignee, *including a person who takes assignment for collection in the regular course of business,* has a right of action on the account in the assignee's own name, subject to the defenses and counterclaims allowed against the instruments mentioned in section 539.2, before notice of the assignment is given to the debtor in writing by the assignee.

(Emphasis added.) Applying the foregoing statutes in the context of small claims litigation, section 631.14 provides in pertinent part:

> A person who in the regular course of business takes assignments of instruments or accounts pursuant to chapter 539, which assignments constitute small claims, may bring an action on an assigned instrument or account in the person's own name and need not be represented by an attorney. . . .

Taken together, A–1 argues, the foregoing statutes effectively overrule *Barnett.* The Commission counters that the amendments pertain only to a *true* assignment and that the principles articulated in *Bar-*

*nett* retain their vitality when considered in the light of the *sham* assignments at issue here. In the alternative, the Commission contends that any statutory interpretation giving the legislature the right to authorize unlicensed practice in our state courts violates constitutional separation of powers principles. *See* Iowa Const. art. III, § 1.[1]

■■■ C. *Analysis.* Several fundamental principles guide our consideration of these competing claims. First, it appears beyond dispute that A–1's litigation-related services on behalf of its clients come within any reasonable definition of the practice of law.

> [T]he practice of law includes the obvious: representing another before the court. But the practice of law includes out-of-court services as well. For example, one who gives legal advice about a person's rights and obligations under the law is practicing law. Or one who prepares legal instruments affecting the rights of others is practicing law. Or one who *approves* the use of legal instruments affecting the rights of others is practicing law.

*Comm. on Prof'l Ethics & Conduct v. Baker,* 492 N.W.2d 695, 701 (Iowa 1992); *accord Bergantzel v. Mlynarik,* 619 N.W.2d 309, 312 (Iowa 2000) (quoting Iowa Code of Prof'l Responsibility EC 3–5); *Bump,* 232 Iowa at 636, 5 N.W.2d at 920.

■ Second, the legislature has vested the power to admit persons to practice law in the courts of this state "exclusively in the supreme court." Iowa Code § 602.10101; *see Bergantzel,* 619 N.W.2d at 311–12 (recognizing exclusive authority and citing implementing rules). We summarily reject A–1's claim that the reach of

section 602.10101 extends only to "constitutional" courts, not "legislative" courts such as small claims. The semantic distinction A–1 attempts to make finds no support in our law, constitutionally or statutorily. To the extent the general assembly may, from time to time, establish "inferior" courts, the judicial power is constitutionally vested in the courts themselves, not the legislature. *See* Iowa Const. art. V, § 1.[2] Consistent with this constitutional scheme, the legislature has established a unified trial court, known as the district court, whose jurisdiction is exercised by judicial officers ranging from district judges through magistrates presiding in small claims. Iowa Code § 602.6101; *see id.* §§ 631.1(1)-(5), .2 (referring uniformly to small claims court as "district court sitting in small claims").

■■■ Third, we are obliged to construe statutes to uphold their constitutionality if possible. *Iowa City v. Nolan,* 239 N.W.2d 102, 103 (Iowa 1976). This means that if sections 539.1, 539.3, and 631.14 lend themselves to more than one construction, one of which renders them constitutional and the other of doubtful constitutionality under our separation of powers clause, we must adopt the construction upholding the statutes. *Id.* Finally, we interpret these provisions in light of their evident legislative intent, harmonizing them, if possible, with related statutes. *Doe v. Ray,* 251 N.W.2d 496, 500–01 (Iowa 1977).

■■■ Applying these principles to the record before us, we are convinced that A–1's practices are not consistent with the ordinary meaning of assignment recognized at common law and by statute and, therefore, cannot be harmonized with the legislature's broad grant of authority to the supreme court under section 602.10101.

1. This article provides:
   The powers of the government of Iowa shall be divided into three separate departments—the Legislative, the Executive, and the Judicial: and no person charged with the exercise of powers properly belonging to one of these departments shall exercise any function appertaining to either of the others, except in cases hereinafter expressly directed or permitted.

2. This article provides that "[t]he judicial power shall be vested in a supreme court, district courts, and such other courts, inferior to the supreme court, as the general assembly may, from time to time, establish."

The assignment form executed by A–1's clients purports to transfer absolutely all right, title, and interest in described accounts receivable owned by A–1's clients. If such instrument actually meant what it said, it would come within the ordinary meaning of assignment—a transfer of the assignor's entire interest or rights in the property. *Padzensky v. Kinzenbaw*, 343 N.W.2d 467, 471 (Iowa 1984); *see generally* 6 Am.Jur.2d *Assignments* § 1, at 185 (1963) ( "[U]nless in some way qualified, [an assignment] is properly the transfer of one's whole interest in an estate, or chattel, or other thing."); Black's Law Dictionary 79–80 (abr. 6th ed.1991) (defining "assignment" as [a] "transfer or making over to another the whole of any property, real or personal, in possession or in action, or of any estate or right therein"). And it would plainly give A–1 the right to maintain an action on the debt in its own name and represent itself in court on a pro se basis if it chose to do so. *Barnett*, 235 Iowa at 313, 16 N.W.2d at 582; *see* Iowa Code §§ 539.1, .3 (authorizing assignments of non-negotiable instruments and open accounts); *id.* § 631.14 (authorizing assignees under chapter 539 to bring small claims actions on such assignments with or without counsel).

A–1's claimed status as a bona fide assignee is defeated under this record, however, because the assignment—though absolute in form—is, in fact, a transfer intended primarily to secure payment for services rendered. *See Padzensky*, 343 N.W.2d at 471 (distinguishing assignment from transfer for security). This is demonstrated by the fact that A–1 pays nothing for the purported "assignment." The letter accompanying the "assignment" confirms that the creditor will receive the proceeds of any recovery less a fixed sum representing A–1's commission for its services. In the case of small claims litigation, those services are indisputably legal in nature. Courts throughout the country have condemned this practice as an attempt by collection agencies to accomplish indirectly what the law otherwise prohib-

its. *State ex rel. Norvell v. Credit Bureau of Albuquerque, Inc.*, 85 N.M. 521, 514 P.2d 40, 49 (1973) (assignments procured by credit bureau not truly taken to acquire title and ownership but to facilitate delivery of legal services for consideration); *State ex rel. Frieson v. Isner*, 168 W.Va. 758, 285 S.E.2d 641, 651–52 (1981) (citing numerous cases to support conclusion that assignment taken solely to maintain suit on creditor's claim is sham perpetrated on court to circumvent unauthorized practice laws); *State ex rel. State Bar of Wisconsin v. Bonded Collections, Inc.*, 36 Wis.2d 643, 154 N.W.2d 250, 256 (1967) ("It is sheer hypocrisy to conclude that the percentage retained by the collection agency represents its equity or ownership share of the claim. It is its fee or charge for professional services rendered.").

A–1 suggests that by adding the words "including a person who takes assignment for collection in the regular course of business" to sections 539.1 and 539.3 the legislature has somehow altered the customary meaning of assignment. We disagree. The statute may as reasonably be read to conform to the ordinary meaning of assignment. An assignment is an assignment, whether done in the regular course of business or not. The instrument before us, though executed as part of A–1's business, does not effect an assignment of its clients' rights but a transfer of them to secure payment for services rendered. Calling it an assignment does not make it so. Neither does it bring the action within the realm of sections 539.1 and .3.

Because the arrangements between A–1 and its clients are not done "pursuant to chapter 539," they do not come within the exception for chapter 539 actions authorized by section 631.14. So long as A–1 is not representing its own legal interests in small claims court, but the legal interests of others, it is engaging—without license or other authorization—in the practice of

law. We therefore affirm the injunction issued against it by the district court.

**AFFIRMED.**

All justices concur except CARTER, J., who dissents.

CARTER, Justice (dissenting).

I dissent.

On the issue of statutory interpretation that is presented, we are not interpreting the word "assignments." We are interpreting the words "including a person who takes assignments for collection in the regular course of business," as used in Iowa Code sections 539.1 and 539.3. I am convinced that those words were intended to authorize the type of collection efforts that are an issue on this appeal. As so interpreted, the legislation effectively overturns the principle this court established in *Bump v. Barnett*, 235 Iowa 308, 16 N.W.2d 579 (1944).

I would reverse the judgment of the district court.