In the Matter of SIPAL REALTY CORPORATION, Appellant. MARTIN L. DANKERS et al., Respondents.

First Department, December 17, 1957.

*Theodore B. Wolf* of counsel (*Frederick B. Sussmann* with him on the brief; *Zalkin & Cohen*, attorneys), for appellant.

*William L. Messing* for respondents.

BERGAN, J. The petitioner is the owner of a building at 200 West 57th Street. This proceeding against respondents as statutory tenants seeks an order determining the rental in pursuance of the Business Rent Law (L. 1945, ch. 314, as amd.). The petition has been dismissed at Special Term on the ground that the conditions upon which relief under this statute is to be predicated are not shown on the face of the pleading.

The case turns upon the reading of a legislative definition. By chapter 417 of the Laws of 1952 an additional category of rental area was brought within the definition of " Business space " contained in subdivision (a) of section 2 of the Business Rent Law.

The text of the amendment here in issue is: " on and after March first, nineteen hundred fifty-two, a building in which at least sixty per centum of the total rentable area and sixty per centum of the total number of units formerly used as dwelling space, is lawfully occupied as business space on such date ".

The petition alleges that portions of the rentable area in 200 West 57th Street " which were formerly used as dwelling space have, from time to time, become converted to, and have been lawfully occupied as, business space." It alleges that some of such conversion and occupancy occurred before March 1, 1952,

but that on that date 60% of the total rentable area in the building and 60% of the total number of units formerly used as dwelling space were not occupied as business space. It is further alleged that '' After March 1, 1952 '' at least 60% of the total rentable area and 60% of the total number of units formerly used as dwelling space '' has become, and is now, lawfully occupied as business space ''.

The issue is thus squarely presented on the face of the petition whether a conversion after March 1, 1952 comes within the scope of the statutory amendment defining '' business space '', or whether a conversion must have occurred before March 1, 1952. In dismissing the petition the court at Special Term was of opinion the conversion must have occurred before March 1, 1952; we construe the statute in a different sense to include as well conversion after that date.

We look first somewhat more closely at the intrinsic language of the amended statutory definition. The effective time reference with which the definition opens is composed of the words '' on and after '' March 1. This, of course, refers not merely to just one day; but to every day succeeding March 1. '' On and after '' is a flowing and not a static concept of time; it is a description of time in a successive and continuous sequence of days; it fixes a beginning point from which the succeeding time area it describes becomes enlarged.

For example, a guarantee applying to sales '' ' on and after the date hereof ' '' was readily construed by the Circuit Court of Appeals to be '' intended to be applied alike '' to present sales and to future sales of goods in *Bond* v. *John V. Farwell Co.* (172 F. 58, 65). There is an elasticity in the meaning of the word '' after '' itself which depends, as do other adverbs of time, such as '' from and after '' and '' then '' on context and upon the intent of usage. (*New York Trust Co.* v. *Portland Ry. Co.*, 197 App. Div. 422, 427.)

No one, indeed, would have difficulty in seeing the meaning of the phrase '' on and after '' read in isolation; and the heavy-handed stress on its sense here finds indulgence because of the words appearing at the end of the phrase: '' is lawfully occupied as business space on such date.''

It is argued by respondents that this language points to a legislative intent to negate the words '' and after '' earlier in the sentence, so that the phrase would be construed as though it read '' on March 1 * * * is lawfully occupied as business space on such date ''. But this would impart an entirely static meaning to '' on and after '' which it is not possible to find in those words themselves; whereas it is possible to read '' on such

date ", when seen in context with a date and a notation of time succeeding that date, to mean on the date named or any date following. Thus the possibility of consistency of the statutory language looked at intrinsically lies in a reading of " on such date " and " on and after " to mean on the date named and any date " after " the nominal date.

When we go slightly beyond the scope of intrinsic reading of the statutory words and look at the direct concomitants of enactment we find ourselves moving in the same direction of construction. The statute was adopted by both houses of the Legislature on March 15, 1952; it was signed by the Governor and took effect April 3.

March 1 had then passed. Nevertheless, the words " is lawfully occupied on such date " were used. If the Legislature had intended a cut-off date then in the past and had been framing a statute having no prospective effect, it would not have used the present tense of the verb to be; instead it would have used " was lawfully occupied ". The tense denoted by " is " not only has the signification of prospective effect suggested by the date of the enactment of this statute, but what is perhaps just as important, the word " is " has a usual signification of prospective effect in statutory usage. And, of course, as it has been said very often, prospective reading of statutes is favored where that possibility lies open (*Garzo* v. *Maid of Mist Steamboat Co.*, 303 N. Y. 516, 522; *Jacobus* v. *Colgate*, 217 N. Y. 235, 240).

When we turn from an intrinsic examination of the statute to an extrinsic one bearing on the genesis of the words used and the purposes intended, we are left in no doubt that the sponsors of the 1952 statute intended to give it a prospective effect. The people attending on the drafting of the words sought to provide for future changes in the character of the lawful occupancy and not to set up a cut-off date in the past giving status only to changes already made. Contemporary explanation of the amendment and executive evaluation of the law alike point in this direction.

The amendment was drafted and submitted to the Legislature by the Temporary State Commission to Study Rent and Rental Conditions. Its report to the Legislature dated March 8, 1952 describes the purpose of the amendment in present terms and not related to March 1, a date then past. It recommended that buildings " when lawfully occupied " by business to the extent of 60% of both the total rentable area and the total number of units formerly occupied for dwelling " be defined as 'business' space."

The report certainly is cast in a prospective sense and the intent of the draftsman is made more explicit in an article written shortly after the enactment by the counsel to the commission (Meringolo, Amendments to Commercial and Business Space Rent Control Laws, N. Y. L. J., April 15, 1952, p. 1486). In two special messages to the Legislature January 20, 1955 and January 23, 1957 the Governor, recommending repeal of the 1952 statute, construed it as having prospective effect.

We conclude, therefore, that the changes from residential to business occupancy occurring before and after March 1, 1952 pleaded in the petition bring the petitioner within the effect of the statute. The report of the commission showed a purpose to prevent abuse of permissible conversion by calling attention to the requirement that the occupancies which make up the percentage of the total must be lawful occupancies. This " should make it plain " the commission commented " that the Legislature will not tolerate nor will it sanction any illegal occupation of rental space." The public policy in an issue of this kind is a matter of legislative and not judicial determination.

The order should be reversed.

VALENTE, J. (dissenting). Before the enactment of chapter 417 of the Laws of 1952, the definition of business space in subdivision (a) of section 2 of the Business Rent Law (L. 1945, ch. 314, as amd.) expressly excluded all " dwelling space and meeting rooms in hotels, and dwelling space in rooming houses, apartment houses, dwellings and other housing accommodations." An exception as to dwelling space was added by chapter 417 of the Laws of 1952 in the following language: " except, on and after March first, nineteen hundred fifty-two, a building in which at least sixty per centum of the total rentable area and sixty per centum of the total number of units formerly used as dwelling space, is lawfully occupied as business space on such date ".

We are called upon to construe that amendment and to determine whether dwelling space is transmuted into the category of business space when 60% of the rentable area of a building and 60% of the total units formerly used as dwelling space therein are lawfully occupied as business space after March 1, 1952 but were not so occupied on March 1, 1952. A majority of this court has interpreted the statute to include conversions after March 1, 1952 as well as those occurring before that date.

In reaching that conclusion, the majority has relied on what it terms the "intrinsic language" of the amendment as well as the "extrinsic" factors of "contemporary explanation of the amendment and executive evaluation of the law."

The cardinal rule of statutory interpretation is to read what the statute says and, from the text, to determine the meaning of the Legislature. The amendment before us contains no words of art and no esoteric language that has secondary significance. Yet, by grammatical exegesis, the majority has construed the language so as to make the words "on such date" mean "on the date named and any time thereafter".

But the stark fact is that statute does not say this and we are bound to read the enactment as meaning what it says. And when the meaning of the words chosen by the Legislature is clear, "extrinsic factors" bearing on the subjective intent of the legislators or the sponsors of the enactment are irrelevant. Speculation on what the Legislature would have done or what it intended to do, predicated on matters dehors the statute, has no place in interpreting simple and unequivocal language expressing what the Legislature actually did. Justice HOLMES once said: "'We do not inquire what the *legislature* meant, we ask only what the *statute* means'". (Jackson — "*The Meaning of Statutes*", 34 A. B. A. J. 538.)

Certainly courts should try to give effect to all the words used in a statute. Even a cursory reading of the exception we are construing will disclose that the interpretation adopted by the majority would be the same if the words "on such date" were eliminated from the statute. Then the exception could be read accurately to apply to all conversions on and after "March 1, 1952". Are we to assume that the Legislature was merely indulging in useless tautology when it added the words "on such date" to a clause whose significance would be apparent without those words?

We usurp the legislative function and indulge in "judicial legislation" when in the guise of construing a statute we depart from the text and arrive at a result which, in effect, deletes significant matter from the enactment being construed. We must interpret and not rewrite the statute.

The stress laid by the majority on the words "on and after" March 1, 1952 is misplaced. Since March 1, 1952 is fixed as the cut-off date, the statute makes it clear that the 60% basis for a conversion must exist not only on March 1 but at any time thereafter when the owner by application to the proper authority seeks to reap the benefits of the claimed conversion. Assuring a continuance of the 60% conditions

"on and after" March 1, 1952 for effective implementation of the exception is wholly consistent with the fixing of the cut-off date of March 1, 1952.

Since the language of the statute is unambiguous, it was unnecessary to seek aid from the "extrinsic" factors to which the majority has alluded. (*Matter of Rathscheck,* 300 N. Y. 346, 350; *McCluskey* v. *Cromwell,* 11 N. Y. 593, 601.) Legislative intent, here, can be determined from the four corners of the statute itself. No amplification is required by reference to opinions of counsel or executive pronouncements. Nor should any such factors be permitted to qualify the unequivocal text of the statute. Particularly is this so when it is sought to extract from a statute a meaning which could easily have been placed there by the Legislature by the use of different language or the exclusion of language actually used.

Nor may we enlarge or restrict the language to conform to the views of the sponsors of the legislation or the expressions of administrative and executive officers. The pertinence and value of such views were discussed by Mr. Justice FRANK-FURTER, in his dissenting opinion in *Shapiro* v. *United States* (335 U. S. 1, 48) as follows: "If the language of a statute is to be subjected to the esoteric interpretative process that the suggested use of the O. P. A. brief implies, since it is the common practice to allow memoranda to be submitted to a committee of Congress by interests, public and private, often high-minded enough but with their own axes to grind, great encouragement will be given to the temptations of administrative officials and others to provide self-serving 'proof' of congressional confirmation for their private views through incorporation of such materials. Hitherto unsuspected opportunities for assuring desired glosses upon innocent-looking legislation would thus be afforded."

If any predominant consideration of legislative purpose were pertinent here it would be that of the fundamental object of all the emergency rent statutes, i.e., to prevent evictions from residential properties and to avoid the exaction of inequitable rents. Consistent with that purpose, the Legislature, in the statute we are construing, fixed a freeze date as of March 1, 1952. This would permit landlords who up to that date— without the benefit of a statute and the ulterior motives which would have prompted their action—had in fact, converted 60% of the rental area of a building and 60% of the total units formerly used as dwelling space into lawfully occupied business space, to obtain the benefits of business space for the balance of the occupied space. However, by restricting benefits to

landlords who had acquired that status "on such date", the Legislature forestalled attempts to convert after that date and thereby continued the protection afforded to residential tenants. No incentive to landlords to increase the percentage of business occupancy at the expense of residential tenants was retained in the statute. The majority has now restored that incentive and by so doing, has undermined the vital purpose of the emergency rent laws.

We would affirm the order of Special Term dismissing the petition.

BOTEIN and MCNALLY JJ., concur with BERGAN, J.; VALENTE, J., dissents in an opinion, in which BREITEL, J. P., concurs.

Order reversed, with $20 costs and disbursements to the appellant, and the motion denied, with $10 costs.