**KELLY ADJUSTMENT CO., a corporation, Appellant,**

v.

**Robert BOYD and Ibula Boyd, Appellees.**

**KELLY ADJUSTMENT CO., a corporation, Appellant,**

v.

**Winston C. JOHNSON, Jr., Appellee.**

**Nos. 8239, 8240.**

District of Columbia Court of Appeals.

Argued Sept. 11, 1974.

Decided July 31, 1975.

Rehearing Denied Sept. 25, 1975.

Bernard D. Lipton, Silver Spring, Md., for appellant.

Michael O. DeMouy, Washington, D.C., with whom Edward E. Schwab and Margaret A. Stone, Washington, D.C., were on the brief, for appellees in No. 8239.

No appearance or brief filed on behalf of appellee Johnson.

Before KERN and GALLAGHER, Associate Judges, and PAIR, Associate Judge, Retired.

GALLAGHER, Associate Judge:

Appellant is a collection agency which obtained judgments against appellee debtors prior to our decision in *J. H. Marshall and Associates, Inc. v. Burleson,* D.C.App., 313 A.2d 587 (1973). In net effect, *Marshall* terminated practices long carried on by collection agencies in this jurisdiction and elsewhere in the collection of debts as being an unauthorized practice of law. We held that:

> Appellant is hereby enjoined, from and after this date, from: advising creditors when to bring suit; soliciting and receiving assignments of claims or debts for collection under which payment, to the assignor or creditor, is dependent on collection from the debtor and which contemplates or authorizes the enforcement of collection by suit, brought in the name of either party, by an attorney at law; employing a lawyer on behalf of

the creditor or an assignor without specific written authority to do so; interposing itself between the creditor and the lawyer handling legal action on the claim; instituting or maintaining legal actions for others; and appropriating to its own use as attorney fees sums adjudged against debtors on assigned claims except when such judgment is its bona fide property. *Id.* at 600.

From all that appears, appellant does not dispute that its practice in obtaining pre-*Marshall* judgments in this case fell within the strictures of *Marshall* laid down soon thereafter. The issue here is whether these pre-*Marshall* judgments are enforceable notwithstanding that decision. This in turn comes down in the final analysis to the question of whether *Marshall* was intended to be prospective only in application.

Appellant attempted to execute upon his pre-*Marshall* judgment against the Boyds by causing a writ of attachment to be issued and served upon The Riggs National Bank as garnishee. After answer by Riggs that it was holding $533.52 to the credit of appellees appellant moved for a judgment of condemnation. Viewing our opinion in *Marshall* as likely to be controlling, the trial court entered an order denying the relief sought and staying the expiration of the attachment pending review by this court.[1]

The practices ended by *Marshall* had been engaged in by collection agencies here for decades without judicial disapproval. They were, in a manner of speaking, a recognized "trade custom". If the practices complained of had been engaged in while seeking a judgment against a debtor after *Marshall* came down, we would of course be governed by that decision. But here the ultimate question is whether *Marshall* should be applied retrospectively.

While *Marshall* did not specifically speak to this question, we hold it was (and should have been) the intent of this court that it be applied prospectively only. Not only were the judgments in question valid when entered but these collection agency practices had a long prior history amounting to custom. If we were to agree with the trial court, we would not only be declining to enforce judgments valid when entered—which would give rise to a serious constitutional problem to say the least—but because of the long-standing custom it would also be inequitable and not required by compelling public policy considerations.[2]

While it is true that in *Marshall* this court prohibited any collection agency ". . . from and after this date, from . . . instituting or maintaining legal actions for others . . ." this was intended to apply only to the institution and maintenance of an action looking toward a judgment and should not affect execution on pre-*Marshall* judgments valid when entered. This is in the interest of a fair and orderly administration of justice. *See e. g., Linkletter v. Walker,* 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965), and *Great Northern Railway Co. v. Sunburst Oil & Refining Co.,* 287 U.S. 358, 53 S.Ct. 145, 77 L.Ed. 360 (1932). In *Linkletter,*

---

1. Appellant also attempted to file a wage attachment for a judgment against appellee Winston C. Johnson, Jr. Appellant was informed that the court had refused to accept for filing wage attachments wherein collection agencies appeared as party plaintiff and judgment creditor. Appellant then motioned the court to accept the filing of an attachment against appellee Johnson and the motion was denied. The two cases were consolidated on appeal.

2. There is no issue here such as in *Shelley v. Kramer,* 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161 (1948), where the court refused to permit state enforcement of racial covenants for being violative of the equal protection clause. Not only is there here no constitutional holding involving private agreements but, rather, there are involved judgments valid when entered. Furthermore, as we have said, there is no compelling public policy consideration working here against allowing enforcement of these pre-*Marshall* judgments.

the Court stated that "the accepted rule today is that in appropriate cases the Court may in the interest of justice make the rule prospective." *Id.* 381 U.S. at 628, 85 S.Ct. at 1737.

In *Bump v. Barnett,* 235 Iowa 308, 16 N. W.2d 579 (1944), the court was faced with this question, and said:

> There should, however, be no uncertainty in the effect upon [prior judgments] of the decree herein. We do not deem these judgments void or voidable by reason of appellant's unauthorized practice of law in obtaining them. The decree should not prevent their enforcement . . . provided that in so doing he does not engage in further unauthorized practice of law. *Id.* at 316, 16 N. W.2d at 584.

If there is no unauthorized practice by the agency in the process, we hold appellant may proceed to enforce these judgments.

*Reversed and remanded for further proceedings.*

KERN, Associate Judge (concurring):

My view of this case differs enough from those of my colleagues to warrant a brief outline first of the facts and then of my conclusion therefrom.

Appellant, represented by an attorney, sought to execute on the two judgments it had earlier obtained against the appellees in these cases—one in the Civil Division and the other in the Small Claims and Conciliation Branch of the trial court. The sparse records before us reflect that the trial judge, without comment, denied leave to appellant to file a wage attachment against appellee Johnson;[1] and refused by written order to enter a judgment of condemnation upon a garnishment which appellant had issued against the garnishee of appellees, the Boyds, with a comment that the original judgment obtained by appellant *"may be* void under authority" of *Marshall v. Burleson,* D.C.App., 313 A. 2d 587 (1973) (Emphasis added.) Appellant now challenges the propriety of these actions by the trial court.

Since appellant in this court does not dispute it was engaged in the unauthorized practice of law, as defined recently by our decision in *Marshall,* when it had earlier obtained the judgments in these cases, I proceed on that assumption, also. The issue then posed, as I see it, is whether *now* we should either (1) declare these judgments void, or (2) refuse to permit their enforcement and leave them dangling on our court system's dockets like so many useless appendages.

The general rule is that for a judgment valid on its face to be declared void there must be a defect going to its very essence. I find no authority which persuades me that a judgment obtained through the unauthorized practice of law under the circumstances disclosed here is so utterly flawed that it must as a matter of law be voided.[2] Nor do I find anything in *Marshall*[3] that requires us to reach that conclusion.

1. Appellee Johnson neither filed a brief nor entered an appearance in this court.

2. *See Bump v. Barnett,* 235 Iowa 308, 16 N.W.2d 7579 (1944). Appellees cite *City of Downey v. Johnson,* 263 Cal.App.2d 775, 69 Cal.Rptr. 830 (1968) and *Leonard v. Walsh,* 73 Ill.App.2d 45, 220 N.E.2d 57 (1966) for the proposition that such judgments are void. In my view, these decisions are inapplicable to the case at bar, for both involved judgments secured by *non-lawyers* acting in a representative capacity and were voided on appeal rather than on collateral attack. I perceive no reason to extend the reasoning of those cases to the facts disclosed on this record.

3. Appellees argue that the injunction approved in *Marshall* specifically applies to actions taken by appellant in attempting to enforce its pre-*Marshall* judgments, and that such actions are simply a continuation of its unauthorized practice of law. I do not think *Marshall* is dispositive of the issue raised here, for that opinion nowhere purports to decide the effect to be given judgments entered prior to its rendition.

Hence we are left in my view with the question whether we should as a matter of public policy and equity declare that there shall be no execution upon any extant judgment obtained through what *Marshall* declared was the unauthorized practice of law.

While this court should not, after our explicit ruling in *Marshall,* sanction further unauthorized practice of law by collection agencies, we must recognize that to declare unenforceable the facially valid judgments in the instant cases because they were obtained in violation of the principles later announced in *Marshall* would effectively render unenforceable *every* judgment presently of record in the name of a collection agency. The resulting confusion between creditors and debtors in the District of Columbia would be quite contrary to public policy and equity. Specifically, if a judgment, valid on its face, held in the name of a collection agency is rendered unenforceable, the creditor would appear to be foreclosed from further proceedings on the debt. Alternatively, the debtor, unless the statute of limitations has run, might be liable *also* to the creditor for the underlying debt and be left with two judgments of record against him on but one obligation.

Balancing the considerations of public policy and equity,[4] I think we are required to permit the enforcement of judgments in favor of collection agencies entered of record at the time of *Marshall,* provided their subsequent enforcement complies with the applicable rules of the court.[5] *See Bump v. Barnett, supra.*

Accordingly, I would reverse the trial court and allow appellant to proceed to enforce its judgments.

PAIR, Associate Judge, Retired (dissenting):

I am unable to agree with my colleagues that we should permit enforcement of appellant's judgment against appellees Robert and Ibula Boyd (the Boyds). In the first place, the judgment is of very doubtful validity in my opinion. Of course, as a general rule this court may not go behind a judgment to inquire as to its validity. However, the court cannot escape its responsibility to examine the record brought here for review.

What appears from the record is that appellant commenced in the Civil Division of the Superior Court an action entitled "Complaint on a Promissory Note."[1] The note, made under seal by the Boyds on December 23, 1970, was payable to a credit union in installments. Appellant alleged in its sworn complaint[2] that it was the assignee of the credit union and as such was entitled to the balance due on the note. Appellant obtained judgment against the Boyds[3] for $1,386.41, representing the balance due on the note, plus interest from March 24, 1972 at 1% per month to date of

---

4. Appellees have never challenged the validity of the original obligations upon which appellant sued and obtained its judgments. Nor have appellees attacked by appropriate motion in the trial court or on brief and in argument in this court the validity of these judgments on their merits; hence the proposition suggested in the dissenting opinion (at 365) that *those* judgments were entered contrary to law is not before us and I would not consider that which has not been developed on the record and briefed and argued.

5. In the instant cases I understand appellant at oral argument to have waived its 20% fee for services rendered to its own client, the creditor.

1. A copy of the note was attached to the complaint and is a part of the record.

2. The credit union was not a party to the action.

3. There is no record showing that appellant was, for the purposes of D.C.Code 1973, § 28:3–301, –302, the holder of the note or that it was otherwise the real party in interest for the purposes of Super.Ct.Civ.R. 17(a). *Cf. District of Columbia v. Hamilton Nat. Bank of Washington,* D.C.Mun.App., 76 A.2d 60 (1950).

judgment and 6% per annum thereafter, and attorney's fees equal to 20% of the sum of the principal and interest due and owing at that time. There is no record showing of any challenge to appellant's standing to maintain, in its own name and right, the action on the promissory note. However, it does not escape attention (1) that as provided in D.C.Code 1973, § 28:3–201(3), –202, a promissory note such as the one here involved may be transferred only by endorsement and (2) that D.C.Code 1973, § 28:3–301 provides that only the holder of such an instrument may maintain an action thereon. *See* and *compare Bonuso v. Shroyer Loan & Finance Co.,* D.C.Mun.App., 37 A.2d 760 (1944).

Thus, absent an endorsement of the note, whatever claim there was against the Boyds that was assigned to appellant it could not properly have been the claim of the credit union on the promissory note. We note from the record that appellant has at all times been identified as assignee of the credit union. Under the circumstances it is extremely doubtful that the trial court had jurisdiction of either the subject matter which was the promissory note or the credit union—the real party in interest. *See also Wolf v. Paving Supply and Equipment Company,* D.C.Mun.App., 154 A.2d 544 (1959); *cf. York Blouse Corp. v. Kaplowitz Bros., Inc.,* D.C.Mun. App., 97 A.2d 465 (1953). What we are asked to sanction therefore is the enforcement of a judgment obtained contrary to controlling acts of Congress and a rule of the very court[4] in which satisfaction was sought.

But whatever view may be taken as to the validity of appellant's judgment against the Boyds, I cannot agree with my colleagues that *J. H. Marshall & Associates, Inc. v. Burleson,* D.C.App., 313 A.2d 587 (1973), must be applied prospectively only. We held in that case that a collection agency cannot lawfully interpose itself between a creditor and an attorney employed to collect the creditor's debt and that "[t]o do so either directly or indirectly, by an assignment or otherwise . . ." constitutes the unauthorized practice of law. Accordingly, J. H. Marshall and any other collection agency in the District was

[E]njoined, from and after [December 28, 1973], from . . . instituting or maintaining legal actions for others; and appropriating to its own use as attorney fees sums adjudged against debtors on assigned claims *except when such judgment is its bona fide property.* [*Id.* at 600; emphasis supplied.]

A prospective application of *Marshall,* as proposed in the majority opinion, would permit appellant and any other collection agency which obtained a judgment on an assigned claim, prior to that decision, to enforce it "[i]f there is no unauthorized practice by the agency in the process . . . ."[5] *See Bump v. Barnett,* 235 Iowa 308, 16 N.W.2d 579, 584 (1944).

What the majority says is that:

While *Marshall* did not specifically speak to this question, we hold it was (and should have been) the intent of this court that it be applied prospectively only. . . .

The apparent difficulty with this holding is that the *Marshall* division of the court declared to the contrary in language crystal clear saying that collection agencies are "enjoined, from and after [December 28,

---

4. Super.Ct.Civ.R. 17(a):

*Real Party In Interest.* Every action shall be prosecuted in the name of the real party in interest. . . . [A] party authorized by statute may sue in his own name without joining with him the party for whose benefit the action is brought. . . .

5. My colleagues do not suggest how, in obtaining satisfaction of the judgment by legal process, appellant can avoid the restrictions of the *Marshall* injunction. In the concurring opinion it seems to be suggested that perhaps appellant has a vested interest in the fruits of its unauthorized practice of law which this court is required to honor.

1973], from . . . instituting or maintaining legal actions for others . . ." on assigned claims.

The words "from and after" like the words "on and after" are words of retrospectivity. They are simple words of plain and ordinary meaning. The term

"On and after" is a flowing and not a static concept of time; it is a description of time in a successive and continuous sequence of days; it fixes a beginning point from which the succeeding time area it describes becomes enlarged. *Application of Sipal Realty Corporation,* 5 A.D.2d 84, 168 N.Y.S.2d 840, 842 (1957).

The conclusion seems compelled, therefore, that the words "from and after this date", employed in the *Marshall* decision must have been intended to mean precisely what they say, *i. e.,* that no collection agency may thereafter institute or maintain a legal action to collect a debt on an assigned claim.

With every due respect for my distinguished colleagues, I question their authority to modify or overrule, in effect, the *Marshall* decision or to substitute their judgment as to what was intended by the language employed in the injunction. I deem it to have been settled by *M.A.P. v. Ryan,* D.C.App., 285 A.2d 310, 312 (1971), that as a matter of internal policy "no division of this court will overrule a prior decision of this court . . . ." [Footnote omitted.]

My colleagues, relying upon *Linkletter v. Walker,* 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965) say, however, that in the interest of justice, *Marshall* must be applied prospectively only. Significantly enough the Supreme Court in the *Linkletter* case cited and quoted with approval from the opinion of Chief Justice Marshall, which has remained undisturbed for more than 170 years. Said the Court in a footnote at 381 U.S. 623, 85 S.Ct. 1734:

8. It is interesting to note, however, that as early as 1801, Chief Justice Marshall in United States v. Schooner Peggy, 1 Cranch 103, 2 L.Ed. 49, had made clear that

"if subsequent to the judgment [in the trial court] and before the decision of the appellate court, a law intervenes and positively changes the rule which governs * * * the court must decide according to existing laws, and if it be necessary to set aside a judgment * * * which cannot be affirmed but in violation of law, the judgment must be set aside." 1 Cranch at 110.

\* \* \* \* \* \*

*See also Vandenbark v. Owens-Illinois Glass Co.,* 311 U.S. 538, 61 S.Ct. 347, 85 L.Ed. 327 (1941), and *Kuhn v. Fairmont Coal Co.,* 215 U.S. 349, 372, 30 S.Ct. 140, 54 L.Ed. 228 (1910) (Holmes, J., dissenting). *District of Columbia v. Linda Pollin Mem. Hous. Corp.,* D.C.App., 313 A.2d 579 (1973).

But, say my colleagues, if we refuse to permit enforcement of the judgment, a serious constitutional problem will arise. I am unable to share their concern. From this record it is too clear for discussion that appellant's interest, if any, in the judgment is limited to its contingent fee arrangement which may include the right to an attorney's fee equal to 20% of the sum of the principal and interest due at the time the judgment is satisfied.[6] And in my view it makes no difference that the judgment stands in the name of the appellant, because it is undisputed in this record that the bona fide interest in the judgment is in the credit union, either as payee of the promissory note[7] or as assignor of

6. At oral argument appellant's lawyer indicated that he would waive the attorney's fee. But he made no such waiver at the trial and on his demand the fee was included in the judgment.

7. A promissory note is not a chose in action and therefore may not be assigned pursuant to D.C.Code 1973, § 28–2303, so as to permit a person other than the holder to maintain an action thereon in his own name.

whatever other claim was assigned to appellant.

Nevertheless, my colleagues say that because the activity of collection agencies, outlawed by *J. H. Marshall and Associates, Inc. v. Burleson, supra,* had been sanctioned for such a long time, it would be inequitable and not required by any compelling public policy consideration to deny enforcement of appellant's judgment. The short answer to this is what was said above. This division of the court may not modify or overrule, in effect, a prior decision of the court. Moreover, if there are equities and public policy considerations other than those that influenced the decision in *Marshall* it would appear that, for reasons indicated above, they are more favorable to the Boyds than to the collection agency. I am not therefore persuaded that this judgment possesses such sanctity that it should be enforced notwithstanding *J. H. Marshall and Associates, Inc. v. Burleson, supra,* which in my opinion is controlling.

Accordingly, I respectfully dissent.